GARY P. BURCHAM
California State Bar No. 190780
964 Fifth Avenue; Suite 300
San Diego, CA 92101
Telephone: (619) 699-5930

Attorney for Rosendo Rodriguez-Gonzalez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE ROGER T. BENITEZ)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07CR3213-BEN |
| Plaintiff, | ) | |
| v. | ) | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION** |
| ROSENDO RODRIGUEZ-GONZALEZ, | ) | |
| Defendants. | ) | |

**I.**

**Background**

Rosendo Rodriguez is a native and citizen of Mexico. Mr. Rodriguez arrived in the United States as an immigrant in April 1990, and lived in this country as a legal permanent resident thereafter. [Ex. "A" at 1].

On March 17, 2005, Mr. Rodriguez was convicted of one count of violating Cal. Penal Code § 273.5, "Corporal injury to a Spouse/Cohabitant." Id. For this conviction, Mr. Rodriguez was sentenced to three years custody. Id. Based on this conviction, the Department of Homeland Security ("DHS") initiated removal proceedings against Mr. Rodriguez. Id. The Notice to Appear alleged that Mr.

1

Rodriguez was removable pursuant to INA § 237(a)(2)(A)(iii), in that he had been convicted of a "crime of violence" aggravated felony following his admission. Id. at 1-2. To establish this removability, the DHS introduced in the immigration court the following documents from the prior conviction: (1) the felony complaint; (2) an abstract of judgment; (3) the court minutes; and (4) a sentencing document. Id. at 4.

After several hearings and briefing on the threshold removability issue, the IJ concluded that the DHS failed to establish that Mr. Rodriguez was removable and terminated the proceedings. Id. at 5. First, as to whether Mr. Rodriguez's section 273.5 conviction categorically qualified as a crime of violence, the IJ held that it did not because a person could be convicted under section 273.5 if he intended to do an innocent act that ultimately and inadvertently resulted in corporal injury. Id. at 4. Based on the broad nature of this statute, the IJ ruled that section 273.5 does not have as an element "the use, attempted use, or threatened use of physical force against the person or property of another" or necessarily "involve a substantial risk that physical force against the person or property or another may be used." Id.

With regard to whether the conviction qualified under a modified categorical analysis, the IJ ruled that there were insufficient judicially noticeable facts in the record to establish that this offense was a crime of violence within the meaning of 18 U.S.C. § 16. Id. The IJ noted that the complaint simply tracked the statutory language from section 273.5, and that none of the other documents submitted by the government detailed the actual conduct that Mr. Rodriguez engaged in. Id. at 4-5. Based on the fact that section 273.5 was overbroad and the government failed to establish through the modified categorical approach

that Mr. Rodriguez had been convicted of the elements of the generically defined crime, the IJ terminated the proceedings against Mr. Rodriguez.

The government appealed this decision to the Board of Immigration Appeals ("BIA"). The BIA reversed the IJ's order. [Ex. "B"]. The BIA found that Mr. Rodriguez's section 273.5 conviction qualified as a crime of violence under both parts of 18 U.S.C. § 16 because "a person cannot be convicted under § 273.5 without willfully using physical force of such violence as to cause a traumatic condition to the victim," and "it is a felony that cannot be committed without the offender disregarding the substantial risk that he will have to use violent physical force against another in order to complete the offense . . . ." [Ex. "B" at 2]. Mr. Rodriguez was ordered removed to Mexico on remand to the immigration court.

## II.

### MR. RODRIGUEZ'S LONE PRIOR DEPORTATION WAS UNLAWFUL BECAUSE THE BIA INCORRECTLY DETERMINED THAT HIS SECTION 273.5 CONVICTION WAS A CRIME OF VIOLENCE THAT RENDERED HIM REMOVABLE AS AN AGGRAVATED FELON

Title 8, section 1326 provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that –
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court first established the concept that a deportation or removal could only be used as an element in a criminal case if the defendant made

1 a "considered and intelligent" waiver of the right to challenge the order
2 of deportation.  Mendoza-Lopez, 481 U.S. at 839-40.  The Court included
3 in this "considered and intelligent" requirement that an alien be
4 properly advised of his right to apply for relief from deportation.  Id.
5 (immigration judge failed to advise alien of right to apply for
6 suspension of deportation).

7 Subsequent to Mendoza-Lopez, the Ninth Circuit has addressed
8 exactly what is required for a waiver to be "considered and intelligent."
9 In United States v. Arrieta, 224 F.3d 1076 (9th Cir. 2000), defendant
10 claimed that his waiver of the right to appeal his deportation order was
11 not "considered and intelligent" because the IJ failed to advise him of
12 his eligibility for a 212(h) waiver.  This Circuit agreed, writing that
13 the failure of the IJ to advise the defendant of his right to request
14 relief from deportation denied him due process and a meaningful
15 opportunity for judicial review -- thereby invalidating his waiver of
16 appeal.  Id. at 1079; accord United States v. Arce-Hernandez, 163 F.3d
17 559, 563  (9th Cir. 1998)(an alien who is not made aware that he has a
18 right to seek relief has no meaningful opportunity to appeal).

19 **A.    Mr. Rodriguez's Administrative Remedies Were Exhausted In This Case**

20 It is well settled that, generally, a party must exhaust his
21 administrative remedies before review of an agency decision can be
22 obtained.  Leorna v. United States Dep't of State, 105 F.3d 548, 552 (9th
23 Cir. 1997).  As is illustrated by the BIA decision on the merits of Mr.
24 Rodriguez's case, there was no further administrative relief that Mr.
25 Rodriguez could have pursued in this case given that the BIA decided the
26 precise issue that led to his removal and which is now raised in this
27 motion.  Section 1326(d) therefore does not bar the instant collateral
28 attack.

07CR3213-BEN

**B.**     **The BIA Incorrectly Determined That Mr. Rodriguez's 2005 Section 273.5 Conviction Was A "Crime Of Violence" Aggravated Felony**

To determine whether a state law offense is a "crime of violence" for purposes of removal proceedings, this Court must first "apply [a] categorical approach to determine whether the full range of conduct covered by the . . . statute falls within the meaning of 'crime of violence.'" <u>Malta-Espinoza v. Gonzales</u>, 478 F.3d 1080, 1082 (9th Cir. 2007) (internal quotations omitted).  If the range of conduct is broader than the definition of the crime of violence, this Court must conduct a modified categorical analysis.  <u>See</u> <u>United States v. Pallares-Galan</u>, 359 F.3d 1088, 1099-1003 (9th Cir. 2004).  A conviction does not qualify under this second-stage analysis unless a consideration of "documentation or other judicially noticeable facts in the record indicate[s] that [the individual] was convicted of the elements of the generically defined crime."  <u>Huerta-Guevara v. Ashcroft</u>, 321 F.3d 883, 887 (9th Cir. 2003).

To qualify as a "crime of violence" under 18 U.S.C. § 16, an offense must either have as an element "the use, attempted use, or threatened use of physical force against the person or property of another," or be a "felony which, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course or committing the offense."  Mr. Rodriguez's statute of conviction, Cal. Penal Code § 273.5, provides:

> a) Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both that fine and imprisonment.

Cal. Penal Code § 273.5(a).  "Traumatic condition" is defined in subsection (c) as "a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force."  Cal. Penal Code § 273.5(c).

Before the BIA, the DHS argued, as it had below, that Mr. Rodriguez was removable because he had been convicted of a crime of violence aggravated felony.  See INA § 237(a)(2)(A)(iii). The definition of "aggravated felony" includes "a crime of violence (as defined in section 16 of title 18 but not including a purely political offense) for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(F).  For the following reasons, the BIA was incorrect in its conclusion that Mr. Rodriguez's section 273.5 conviction was a categorical crime of violence.

**1.    Section 273.5 Is Not A Crime Of Violence Because It Does Not Necessarily Involve A Substantial Risk Of The Use Of Violent Force**

The first reason that the BIA's ruling that section 273.5 is a categorical crime of violence was incorrect is that section 273.5(a) encompasses conduct that does not involve the substantial risk that violent physical force will be used.  This is the case for two reasons: (1) because § 273.5(a) encompasses any act of physical touching, whether violent or non-violent, that results in bodily injury, it does not necessarily involve the substantial risk of the use of violent force; and (2) section 273.5(a) defines injury so broadly as to include any injury, no matter how minor, that it is possible to inflict such injury without using violent force.

**a.    Section 273.5(a) Can Be Violated By The Use Of Non-Violent Force That Results In Injury Because The Statute Is Defined In Terms Of The Injury, Not In Terms Of The Force Used**

Section 273.5(a) does not categorically constitute a crime of

violence because it can be violated where an individual uses non-violent force that results in a corporal injury. Because section 273.5(a) is defined in terms of the resulting injury, not the amount of force used, any force, including non-violent force, that results in a traumatic condition violates section 273.5.

A categorical analysis of section 273.5 must start with the California simple battery statute - Cal. Penal Code section 242. Section 242 defines battery as "any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242. Both the Ninth Circuit and the BIA have held that this statute does not require the use of violent force and therefore is not a "crime of violence." This is the case because although a battery requires the direct application of physical force, it does not require the use of violent physical force. See Ortega-Mendez v. Gonzales, 450 F.3d 1010, 1016-18 (9th Cir. 2006)(holding that is not a crime of violence under section 16(a)); Matter of Sanudo, 23 I&N Dec. 968, 973-74 & n.3 (BIA 2006)(holding that section 242 is not a crime of violence under either 16(a) or 16(b)). Because both parts of section 16 use the term "physical force," Ortega-Mendez's reasoning applies equally to § 16(b). See Leocal v. Ashcroft, 543 U.S. 1, 11 (2004)(giving § 16(b) "an identical construction" to § 16(a) because both subsections require the "use of physical force").

In Ortega-Mendez, the Ninth Circuit held that even though section 242 requires the use of force or violence, "[l]ooking at how California courts have interpreted the phrase 'use of force or violence' in section 242, it becomes evident that the phrase is a term of art, requiring neither a force capable of hurting or causing injury nor violence in the usual sense of the term." Ortega-Mendez, 450 F.3d at 1016. The Ninth Circuit relied on a long line of cases holding that the

"least touching may constitute battery" and that force used "against the person is enough, it need not be violent or severe." Id. (quoting People v. Colantuono, 865 P.2d 704, 709 n.4 (Cal. 1994)). Thus, the term "force," as used in the context of California battery offenses, does not signify the type of violent force required to constitute a crime of violence.

Section 273.5(a), like section 242, is a battery offense, with the only difference in the two being that section 273.5(a) imposes the additional requirement that the battery result in "corporal injury." See People v. Thurston, 84 Cal.Rptr.2d 221, 223 (1999)(holding that section 273.5(a) "is a battery offense - a use of force resulting in injury"). While the BIA relied on this difference in its findings that section 273.5 qualified as a crime of violence under both parts of section 16, [Ex. "B" at 2], this focus on the resulting injury is misguided. In determining whether an offense is a crime of violence under § 16(b), the appropriate criterion is the risk that violent physical force will be used, not the risk that injury will result. See Leocal, 543 U.S. at 10 & n.7 (holding that § 16(b) does not apply to all crimes which create a substantial risk of injury because "[t]he 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct"); accord Malta-Espinoza, 478 F.3d at 1084 (distinguishing the risk that physical force will be used from the risk of harm suffered).

Under this framework, section 273.5(a) cannot be a categorical crime of violence because the same non-violent force that gives rise to simple battery also can give rise to a violation of section 273.5(a), irrespective of the fact that section 273.5(a) requires a resulting traumatic condition. This can be seen by looking to judicial interpretation of California's felony battery statute, Cal. Penal Code

§ 243(d), which also has an injury requirement that distinguishes it from simple battery. See, e.g., Thurston, 84 Cal.Rptr.2d at 224-25 (relying on other battery statutes, including § 243(d), to interpret § 273.5(a)).

Like section 273.5(a), which includes as an element the "inflict[ion] of corporal injury," section 243(d) makes it a felony "[w]hen a battery is committed against any person and serious bodily injury is inflicted on the person." Cal. Penal Code § 243(d). Courts interpreting section 243(d) have held that simple battery and felony battery differ only in the resulting injury, not in the amount of force used. People v. Elwell, 253 Cal. Rptr. 480, 483 (1988)("section 243 focuses on the actual injury inflicted, not on the force used"); accord People v. Mansfield, 245 Cal. Rptr. 800, 803 (1988) ("The offense of felony battery is a simple battery which results in serious bodily injury."); People v. Hopkins, 142 Cal. Rptr. 572, 573 (1978) (holding that felony battery focuses on the resulting injury, not on the force used). Consequently, because "force likely to cause serious bodily injury is not a requirement" of section 243(d), battery resulting in serious bodily injury, just like simple battery, "can arise from the 'least touching.'" Elwell, 253 Cal. Rptr. at 483 (quoting Mansfield, 245 Cal. Rptr. at 803). In other words, section 243(d) "makes a felony of the act of battery which results in serious bodily harm to the victim no matter what means or force was used." Id. (quoting Hopkins, 142 Cal. Rptr. at 572). Thus, any force, including the same non-violent force that can give rise to simple battery, can give rise to battery resulting in bodily injury.

Indeed, there are any number of ways in which bodily injury can result from non-violent force. In People v. Chavez, 100 Cal. Rptr. 2d 680, 682 (2000) the court found that, with regard to felony battery, "the

least offensive push can cause great bodily injury." In In re Ronnie N., 220 Cal. Rptr. 365, 368 (1985), the court held that a simple push that results in a fall causing serious injury would be triable as a felony battery even though it may not involve violent force. Similarly, one can cause bodily injury without using violent force simply by touching someone in a way that provokes a serious allergic reaction. Cf. Larin-Ulloa v. Gonzalez, 462 F.3d 456, 467 (5th Cir. 2006)(holding that a statute making it a crime to "'caus[e] physical contact with another person' under circumstances where 'great bodily harm, disfigurement or death' can result" was not a crime of violence because the statute could be violated by a physician who injects medication to which a patient is allergic). Thus, just as felony battery does not require the use of violent force, section 273.5(a), which criminalizes battery that results in corporal injury, also does not require the use of violent force. Therefore section 273.5(a) does not constitute a crime of violence.

The conclusion that the statutory language of section 273.5(a), which by its terms focuses on the resulting injury rather than the amount of force used, encompasses non-violent force is reinforced further by comparing the statute to California's aggravated assault statute, Cal Penal Code § 245(a)(1), which explicitly requires the use of significant force. See Smith v. Superior Court, 137 P.3d 218, 223 (Cal. 2006) ("Mindful that statutory terms must not be viewed in isolation, we look to the legislative scheme as a whole, including other related statutes . . . in order to glean the proper construction."). By contrast to section 243(d) and 273.5(a), which criminalize batteries that result in bodily injury, section 245(a)(1) criminalizes "assault . . . by any means of force likely to produce great bodily injury." Cal. Penal Code § 245(a)(1). "Unlike felony battery, an aggravated assault within [§

245(a)(1)] focuses on the force used and not the actual injury inflicted; force likely to cause serious bodily injury is a required element of this crime." Elwell, 253 Cal. Rptr. at 483; see also People v. Bertoldo, 143 Cal. Rptr. 675, 679 (1978)(holding that § 245(a) "specifically addresses the conduct of a defendant by prohibiting an attack upon another person. In contrast, section 243 addresses the result of conduct rather than proscribing specific conduct."); Hopkins, 142 Cal. Rptr. at 573. This express distinction between aggravated assault and battery demonstrates that when the California Legislature intended to define a crime by the amount of force required, it did so explicitly. Its failure to do so in section 273.5(a) reflects a conscious decision to define section 273.5(a) broadly enough to encompass any situation in which physical touching results in injury, no matter how little force is actually used. Section 273.5(a) therefore encompasses conduct that does not involve the "substantial risk" that violent force will be used.

People v. Jackson, 91 Cal. Rptr.2d 805, 810 (2000), which was cited in the BIA opinion, does not change this result. [Ex. "B" at 2]. Jackson establishes only that injury under section 273.5(a) must "result[] from a direct application of force on the victim by the defendant," not that it must result from violent force. Id. As previously shown, the term "force" as used in California's battery statutes encompasses any unwanted touching, which includes non-violent force. See, e.g., Ortega-Mendez, 450 F.3d at 1016; Elwell, 253 Cal. Rptr. at 482 ("force against the person is enough; it need not be violent or severe" (emphasis in original)). Therefore, Jackson's requirement of a direct application of force does not transform section 273.5(a) into a crime of violence.

Nor does the Ninth Circuit's decision in United States v. Jimenez, 258 F.3d 1120, 1125 (9th Cir. 2001), support the BIA's

conclusion.  In Jiminez, the Ninth Circuit made a comment in passing that "Jimenez does not, nor could he reasonably, dispute that inflicting corporal injury on his spouse involved the use of violence." Jimenez, 258 F.3d at 1125. When this comment is read in context, however, it is clear that this lone statement, which is devoid of any analysis, does not control ths issue.  In Jimenez, the question of whether section 273.5(a) satisfied the federal definition of a crime of violence was not before the court because the defendant did not challenge the district court's decision on that issue. Id. at 1125 n.5.  Instead, the only issue on appeal was whether the defendant had received a term of imprisonment of at least one year, as required to qualify as an aggravated felony. Id. Thus, the court's statement, which concerned an issue that was neither before the court nor necessary to its decision, and which was unaccompanied by any citation to or analysis of relevant California case law explaining that non-violent force can result in bodily injury, is inapposite. See, e.g., Ortega-Mendez, 450 F.3d at 1018-20 (refusing to follow previous Ninth Circuit decision holding that battery is a crime of violence because that decision failed to address relevant California case law on battery); Best Life Assurance Co. v. Comm'r of Internal Revenue, 281 F.3d 828, 834 (9th Cir. 2002) (holding that statements which are unnecessary to the court's decision are non-binding dicta). Moreover, Jimenez did not address the fact that section 273.5(a) is a general intent statute, and its continued vitality is in doubt in light of the Supreme Court's subsequent decision in Leocal and the Ninth Circuit's en banc decision in Fernandez-Ruiz v. Gonzalez, 466 F.3d 1121 (9th Cir. 2006)(en banc), which held that a crime of violence requires a specific intent to use violent force. Consequently, the Jimenez panel's passing reference to section 273.5(a) is inapposite.

In sum, because section 273.5(a) does not require any force greater than that required for simple battery, it is not an offense that "by its nature" involves a substantial risk of the use of violent force and therefore is not a crime of violence.

**b.** **Section 273.5(a) Also Encompasses Minor Injuries That Do Not Require the Use of Violent Force**

Even if the inclusion of a resulting injury requirement were relevant to the amount of force required to violate section 273.5(a), the statute still does not involve the substantial risk of the use of violent force. The BIA concluded that section 273.5(a) cannot be committed without the "offender disregarding the substantial risk that he will have to use violent physical force against another in order to complete the offense, either to inflict the traumatic condition that the statute requires or to overcome the victim's resistance." [Ex. "B" at 2]. The BIA, however, ignored the fact that section 273.5(a) purposely defines injury so broadly as to include any injury, whether violent or not. As a result, one can cause a "traumatic condition" without using the violent physical force required for a crime of violence.

Although section 273.5(a) requires a resulting "traumatic condition," the California Legislature has defined "traumatic condition" broadly to include any injury, no matter how minor. The statute states:

> (c) As used in this section, 'traumatic condition' means a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force.

Cal Penal Code § 273.5(c). The inclusion of the language "'whether of a minor or serious nature' is simply another way of saying <u>the injury may be of any variety</u> or <u>regardless of the seriousness</u>." <u>People v. Chaffer</u>, 4 Cal. Rptr. 3d 441, 446 (2003)(emphases in original); <u>see also</u> <u>People v. Wilkins</u>, 17 Cal. Rprt.2d 743, 748 (1993)("Section 273.5 is violated when

the defendant inflicts even 'minor' injury."). The California Legislature purposely intended the statute to encompass minimal injuries because it wanted to provide expansive protection for people involved in domestic relationships. See <u>People v. Silva</u>, 33 Cal. Rptr.2d 181, 184 (1994) ("[T]he Legislature has clothed persons of the opposite sex in intimate relationships with greater protection by requiring less harm to be inflicted before the offense is committed.") (internal quotation omitted). Consequently, courts have found that mere bruising qualifies as a "traumatic condition" within the meaning of section 273.5. <u>See United States v. Hall</u>, 419 F.3d 980, 986 (9th Cir. 2005) (stating that bruising meets the traumatic condition requirement of section 273.5) (citing <u>People v. Beasley</u>, 130 Cal. Rptr. 2d 717, 721 (2003)); <u>cf.</u> <u>Wilkins</u>, 17 Cal. Rptr. 2d at 748 (holding that redness on the face of a victim is sufficient to establish probable cause for police to believe that a perpetrator has violated section 273.5).

Because minor injuries like bruising that are encompassed in section 273.5(a) can be inflicted without using violent force, section 273.5(a) is not a crime of violence. Although it is possible for violent force to produce a minor injury such as throwing a heavy punch that only grazes the cheek of the victim, it equally possible, if not more likely, for a minor injury to result from non-violent or minor force.

The Seventh Circuit recognized this fact in <u>Flores v. Ashcroft</u>, 350 F.3d 666, 672 (7th Cir. 2003), in which it held that an Indiana battery statute prohibiting "knowingly or intentionally touch[ing] another person in a rude, insolent, or angry manner" that "results in bodily injury to any other person" was not a crime of violence because the statute could be violated by using non-violent force. The Seventh Circuit stated that the statute at issue would be violated by "a squeeze of the arm [that]

1  causes a bruise" and stated that such a squeeze could not be construed as
2  rising to the level of violent physical force.  Id. at 670.

3      The Seventh Circuit's reasoning in Flores applies with equal force
4  here.  Because section 273.5(a) absolutely can be violated by an act such
5  as squeezing one's arm and causing a bruise, it does not require the use
6  of violent physical force.  This extraordinarily low injury threshold for
7  section 273.5(a) that encompasses any injury, no matter how minor,
8  requires the finding that section 273.5 is not a felony that "by its
9  nature, involves a substantial risk that physical force . . . may be
10 used."

11      **2.  <u>Section 273.5(a) Also Is Not A Crime Of Violence
        Because It Does Not Necessarily Involve A
12      Substantial Risk Of The *Intentional* Use Of Force</u>**

13     Not only does section 273.5(a) not involve the substantial risk of
14 the use of violent force, it also is not a crime of violence because, as
15 the IJ correctly held, the statute can be violated without the
16 substantial risk of the <u>intentional</u> use of violent physical force as
17 required by 18 U.S.C. § 16(b). [Ex. A" at 4]("[I]t is conceivable that a
18 person may be convicted under C.P.C section 273.5(a) where he intends to
19 do some innocent act that ultimately results in corporal injury, albeit
20 inadvertently."). Section 273.5(a) requires only the intent to commit an
21 act which results in a traumatic condition, but not the intent to cause
22 the traumatic condition itself.  Thus, the statute is violated even where
23 a traumatic condition results accidentally or negligently. Because an
24 actor can violate the statute by willfully committing an act that
25 unintentionally causes a traumatic condition, section 273.5(a) does not
26 involve a substantial risk that violent force will be used intentionally
27 and therefore is not a crime of violence.

28     In contrast to the federal crime of violence statute, which requires

the "specific intent" to use violent physical force, see Tran v. Gonzales, 414 F.3d 464, 471 (3d Cir. 2005), section 273.5(a) does not require that a defendant act with specific intent to cause a traumatic condition, but only to "willfully" commit an act "resulting in a traumatic condition." Cal Penal Code § 7(1) defines the mental state of "willfully" as follows:

> The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.

Cal. Penal Code § 7(1). Both California courts and the Ninth Circuit have categorized California criminal statutes using the word "willfully" as general intent rather than specific intent crimes, and have held that under California law, "willfully" requires merely a general intent to commit the initial act, but not a specific intent to inflict a traumatic condition or any injury at all. People v. Atkins, 18 P.3d 660, 666 (Cal. 2001); Thurston, 84 Cal. Rptr. 2d at 223 ("[W]illfully language without any additional specific intent language denotes a general intent offense."); accord Galeana-Mendoza v. Gonzales, 465 F.3d 1054, 1060 n.10 (9th Cir. 2006) ("[W]illfully when applied to the intent to which an act is done implies simply a purpose or willingness to commit the act and does not require any intent to injure another." (internal quotation omitted)). Consequently, section 273.5(a) is a general intent crime requiring only the intent to commit the initial act, but not the intent to cause corporal injury or a traumatic condition:

> [T]he statute prohibiting the infliction of corporal injury on a child (§ 273d) uses almost identical language to section 273.5, and the courts have consistently held that this offense is a general intent crime requiring only that the assailant have purpose or willingness to commit the act, not the specific intent to inflict the traumatic injury.

People v. Campbell, 90 Cal. Rptr. 2d 315, 317-18 (Cal. Ct. App. 1999) (quotation omitted, emphasis in original) (adopting the same reading for section 273.5(a)); accord Thurston, 84 Cal. Rptr. 2d at 224-25 ("Defendant argues that, even if characterized as a general intent crime, section 273.5, subdivision (a) still requires an instruction that the perpetrator had a separate intent to bring about the injury. This is simply wrong . . . .").

The fact that section 273.5(a) requires only general intent rather than the specific intent required by 18 U.S.C. § 16(b) is central to the instant analysis. See, e.g., Flores, 350 F.3d at 671 (stating that the Board wrongly conflated the "intent to touch" with the "intent to injure" in erroneously holding that an Indiana battery statute constituted a crime of violence). Because intent to cause a traumatic condition is not a required element, section 273.5(a) is violated even when the traumatic condition results from negligent or accidental conduct, which the Supreme Court has held does not constitute a crime of violence. See Leocal, 543 U.S. at 9 (holding that the "use" of physical force excludes "negligent or merely accidental conduct").

In fact, California courts have interpreted statutes similar to section 273.5(a) to apply to injuries caused accidentally. In People v. Guzman, 91 Cal. Rptr. 2d 885, 887 (2000), the court of appeal held that Cal Penal Code § 12022.7, which provides a sentencing enhancement for "[a]ny person who personally inflicts great bodily injury . . . in the commission or attempted commission of a felony," applies to accidental injuries caused by driving while intoxicated. Although section 12022.7 does not include an explicit mental state requirement, it has been construed as a general intent statute requiring "the purpose or willingness to do the act or omission," People v. Verlinde, 123 Cal.

Rptr. 2d 322, 338 (2002), which is the same general intent required under § 273.5(a).[1] In Guzman, the court held that an intoxicated driver personally inflicted injury on his passenger within the meaning of section 12022.7 when he accidentally turned his vehicle into oncoming traffic, thereby directly applying force to his passenger. Guzman, 91 Cal. Rptr. 2d at 887. The court held that the enhancement applied notwithstanding "the accidental nature of the injuries suffered," because the defendant's intentional act of turning his car met section 12022.7's requirement that the defendant willfully or purposefully commit an act that "personally inflicts great bodily injury." Id.

It follows from Guzman that section 273.5(a) also can be violated by accidental or negligent conduct. Since section 273.5(a), like section 12022.7(a), merely requires a general intent to commit an act that results in bodily injury, section 273.5(a) similarly would be violated by someone who drove under the influence of alcohol with his or her spouse as a passenger and got into an accident that injured the spouse. The United States Supreme Court, however, has held explicitly that drunk driving offenses like the one at issue in Guzman do not constitute crimes of violence because the injuries result from accidental or negligent conduct. In Leocal, the Court held that a Florida statute making it a felony to cause serious bodily injury to another while driving under the

---

[1]Prior to January 1, 1996, Cal Penal Code § 12022.7 read in pertinent part that "any person who, with the intent to inflict the injury, personally inflicts great bodily injury" was subject to a sentence enhancement. Verlinde, 123 Cal. Rptr. 2d at 337. The California Legislature amended § 12022.7 in 1995, deleting "with the intent to inflict the injury" and thus changing the required mental state from specific intent to general intent. Id. Importantly, "[t]he 1995 amendment did not totally eliminate an intent requirement and make section 12022.7, subdivision (a) a strict liability provision; rather it made the statute a general intent provision." Id. at 338.

influence of alcohol (DUI), a statute virtually identical to the one found in <u>Guzman</u>, was not a crime of violence because it criminalized injuries caused negligently or accidentally.  <u>Leocal</u>, 543 U.S. at 11 ("Section 16 therefore cannot be read to include petitioner's conviction for DUI causing serious bodily injury under Florida law.").  Because section 273.5(a) covers the precise types of crimes that the Supreme Court has held do not qualify as crimes of violence, section 273.5(a) also does not qualify as a crime of violence.

Although the BIA cited <u>Jackson</u>, 91 Cal. Rptr. 2d at 805, for the proposition that "inflicts" means that the corporal injury must result from a direct application of force by the perpetrator upon the victim," [Ex. "B" at 2], <u>Jackson</u> simply establishes that section 273.5(a) requires an actor to <u>directly</u> cause the injury, not to <u>intentionally</u> cause the injury.  <u>Id.</u> at 810 (rejecting the argument that section 273.5(a) is violated as long as force is an indirect, but proximate, cause of the victim's injury).  In <u>Jackson</u>, the defendant pushed the victim against a car, and when she turned to walk away, she tripped and fell, suffering a resulting injury.  <u>Id.</u> at 807.  The court concluded that the direct cause of the victim's injury was her own intervening act, not the defendant's push.  <u>Id.</u> at 810.  <u>Jackson</u> therefore is inapposite, because the fact that a person intentionally commits an act that directly results in force does not mean that the person intentionally applies violent force. As <u>Guzman</u> demonstrates, an individual can violate section 273.5(a) by intentionally committing an act, such as turning a car into traffic, that directly, but unintentionally, results in injury.

The Fifth Circuit reinforced this distinction in holding that a statute which can be violated by intentional acts that directly but accidentally inflict injury is not a crime of violence.  See <u>Larin-Ulloa</u>,

462 F.3d at 466-67.  The Fifth Circuit held that a Kansas aggravated battery statute that criminalized "intentionally causing physical contact with another person" under circumstances where "great bodily harm, disfigurement or death can be inflicted," does not constitute a crime of violence because it can be violated where a person intentionally uses non-violent physical force that negligently or accidentally causes injury.  Id. at 467.  In support of this holding, the Fifth Circuit noted that the statute could be violated by a physician who negligently injects medication to which the patient is extremely allergic, or by a dentist who negligently uses non-sterile equipment to clean a patient's teeth. Id.  Such acts also would come within the scope of section 273.5(a) because they are intentional acts of physical contact that result in injury, even though the injury is not intended.  Accordingly, just as the Kansas law at issue in Larin-Ulloa was held not to be a categorical crime of violence, neither is section 273.5(a) a crime of violence.

In sum, because a defendant may violate section 273.5(a) without intending the traumatic condition, a section 273.5(a) offense does not by its nature involve a substantial risk that the defendant may use intentional physical force during the commission of the offense and thus is not a crime of violence under 18 U.S.C. § 16(b).

   **3.  This Conviction Did Not Qualify As A Crime Of Violence Under A Modified Categorical Approach**

If the range of conduct is broader than the definition of the crime of violence, this Court must conduct a modified categorical analysis.  See Pallares-Galan, 359 F.3d at 1099-1003.  A conviction does not qualify under this second-stage analysis unless a consideration of "documentation or other judicially noticeable facts in the record indicate[s] that [the individual] was convicted of the elements of the generically defined crime."  Huerta-Guevara, 321 F.3d at 887.

As the IJ found below, the documents introduced by the government that related to the section 273.5 conviction failed to indicate that Mr. Rodriguez "was convicted of the elements of the generically defined crime." Huerta-Guevara, 321 F.3d at 887. These documents, including the felony complaint, abstract of judgment, minutes, and a sentencing document, did nothing more than establish that Mr. Rodriguez suffered a section 273.5 conviction based on a complaint that tracked the language of the statute. Because there were no "judicially noticeable facts in the record indicat[ing] that [Mr. Rodriguez] was convicted of the elements of the generically defined crime," Huerta-Guevara, 321 F.3d at 887, a second stage analysis based on the documentation that was before the IJ and the BIA at the time of Mr. Rodriguez's removal proceedings does not save the BIA's ruling.

**C.    Mr. Rodriguez Was Prejudiced By The BIA's Error**

The final issue that Mr. Rodriguez must confront in connection with section 1326(d) is whether the entry of the order of deportation was fundamentally unfair due to the BIA's incorrect determination as to his removability in the first instance. In order to establish this third prong of section 1326(d), a defendant must establish that his due process rights were violated by defects in his underlying removal hearing, and that he suffered prejudice as a result of these defects. See United States v. Ortiz-Lopez, 385 F.3d 1202, 1204 (9th Cir. 2004). In order to establish prejudice in this Circuit, all that must be demonstrated is that the individual had a "plausible" ground for relief. See United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1050 (9th Cir. 2004); United States v. Jiminez-Marmolejo, 104 F.3d 1082, 1086 (9th Cir. 1996).

As set forth above, Mr. Rodriguez's immigration proceedings suffered from a substantial defect in that the BIA erroneously found that he had

been convicted of a crime of violence aggravated felony and therefore was removable on that basis with no relief available to him.  Mr. Rodriguez clearly was prejudiced by this determination because, had the BIA not incorrectly reversed the IJ's determination that Mr. Rodriguez was not removable, Mr. Rodriguez's proceedings would have been terminated and he would have never have been stripped of his legal residency and removed to Mexico.  Mr. Rodriguez therefore satisfies the third and final prong of section 1326(d).

## III.

## CONCLUSION

Because Mr. Rodriguez satisfies each prong of section 1326(d), this Court must grant the instant motion to dismiss the indictment.

Respectfully submitted,


Dated: February 29, 2008        /s/ Gary P. Burcham
                                GARY P. BURCHAM
                                Attorney for Rosendo Rodriguez-Gonzalez